IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE ROGERS, | ) | CASE NO. 1:14 CV 1306 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by Denise Rogers under 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security denying her applications for

disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Rogers, who was 49 years old at the time of the administrative hearing,[10] has a bachelor's degree in accounting[11] and has previously worked in various accounting-related positions, as well as working as a manager for a trucking company.[12] At the time of the hearing she and her 26-year-old son resided with a friend who was also her landlord.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Rogers had the following severe impairments: chondromalacia of the right patella, degenerative disc disease, displacement of the first coccygeal segment, osteoporosis,

---

[6] ECF # 14.

[7] ECF # 20 (Rogers's brief); ECF # 23 (Commissioner's brief).

[8] ECF # 20-1 (Rogers's charts); ECF # 23-1 (Commissioner's charts).

[9] ECF # 19 (Rogers's fact sheet).

[10] Transcript ("Tr.") at 330, 332.

[11] *Id.* at 347.

[12] *Id.* at 353-55.

[13] *Id.* at 347.

overactive bladder, major depressive disorder, and attention deficit hyperactivity disorder (ADHD).[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Rogers's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) including the ability to stand and walk for six hours and sit for six hours but with a sit/stand option every hour for approximately five minutes, but not leaving the work station. In addition, the claimant can occasionally climb stairs and ramps, bend, and balance, but cannot kneel or crawl. She can frequently reach in front and occasionally overhead, can handle, finger, and feel, and must not be exposed to hazardous conditions. Finally, the claimant can perform simple, routine tasks with simple, short instructions, making simple work-related decisions, with few workplace changes, and only superficial interaction with co-workers, supervisors, and the public.[15]

The ALJ decided that this residual functional capacity precluded Rogers from performing her past relevant work as an accountant, loan clerk, auditor's assistant, office manager, and accounting technician.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[14] *Id.* at 322.

[15] *Id.* at 325.

[16] *Id.* at 330.

determined that a significant number of jobs existed locally and nationally that Rogers could perform.[17] The ALJ, therefore, found Rogers not under a disability.[18]

## C.    Issues on judicial review and decision

Rogers asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Rogers presents the following issues for judicial review:

- The decision of the ALJ lacks substantial evidence as the judge did not properly evaluate the opinions of one of plaintiff's treating physicians, Dr. David Mandel.

- The decision of the ALJ lacks substantial evidence as the judge did not properly evaluate the opinions of Dr. Khoa Tran, plaintiff's treating psychiatrist.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

## A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[17] *Id.* at 331.

[18] *Id.*

[19] ECF # 20 at 1.

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating

---

[23] 20 C.F.R. § 404.1527(d)(2).

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

---

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should

---

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the

---

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

---

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

## B. Application of standard

This case rests on whether the ALJ properly assessed and weighed the opinions of two treating physicians and then provided good reasons for the weight eventually given to these opinions. For the reasons given below, I will find that the ALJ's analysis here is consistent

---

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

with the treating physician rule/good reasons requirement, and so the Commissioner's decision is supported by substantial evidence and must be affirmed.

### 1.    Dr. David Mandel

David Mandel, M.D., is the rheumatologist who began treating Rogers in June, 2011.[71] After diagnosing osteoarthritis in Rogers's right knee in July, 2011, [72] Dr. Mandel did not then see Rogers for over a year, or until August, 2012, when he summarily opined that Rogers had been disabled for two years due to her arthritis and emotional problems.[73] One month later, in September, 2012, Dr. Mandel gave a more detailed opinion as to Rogers's functional capacity wherein he stated that, due to her arthritis, Rogers was limited to lifting no more than 10 pounds occasionally and 5 pounds frequently; could stand or walk for less than one hour a day, and could sit for only 4 hours a day, with only one hour at a time; could occasionally balance, but could rarely perform any other postural activity; and would require an at-will sit/stand option.[74]

The ALJ accorded "little weight" to either of Dr. Mandel's opinions because they are "inconsistent with the longitudinal medical evidence, which shows that the claimant has experienced improvement of her symptoms with the use of pain medications and steroid

---

[71] Tr. at 1481.

[72] *Id.* at 1485.

[73] *Id.* at 329.

[74] *Id.* at 1895-96.

-14-

injections."[75] In addition, the ALJ noted that Dr. Mandel had rendered his August, 2012, opinion at a time when he had not examined Rogers for more than a year, and further noted that opinions as to disability are reserved to the Commissioner.[76]

Rogers's main objection to the ALJ's finding here is that the reasons given for according Dr. Mandel's opinion only little weight are not "good reasons."[77] Specifically, she asserts that the record contains "objective medical findings that support [Rogers's] complaints of pain and that support the [functional] limitations supplied by Dr. Mandel."[78] To that point, Rogers cites: (1) three surgeries on her right knee, together with an MRI that shows irregularities with the cartilage; (2) evidence of cervical disc protrusions; (3) a displaced coccyx from "an old injury;"and (4) her arthritis itself.[79] Moreover, she maintains that the pain medications and injections – cited by the ALJ as disproving Dr. Mandel's opinion as to functional limitations – were not effective over any period longer than a few weeks, and ultimately needed to be discontinued entirely because she was abusing those medications.[80]

---

[75] *Id.* at 329.

[76] *Id.*

[77] ECF # 20 at 18.

[78] *Id.*

[79] *Id.*

[80] *Id.*

I note initially that many of the factors cited here by Rogers merely restate physical limitations that are already clearly acknowledged by the ALJ, and, as such, simply beg the question of whether such impairments produce disabling pain and/or whether that pain can be managed effectively. Further, as the Commissioner observes, the record plainly shows both that Rogers went for months at a time without employing pain medication or receiving steroid treatment: (1) between July and November of 2011; (2) between January and March of 2012; and (3) also possibly between March and July of 2012.[81]

But this record of gaps in receiving pain treatment is not without explanation in the record. Treatment notes from Khoa Tran, M.D., Rogers's treating psychiatrist, show that Rogers stopped taking her pain medications in July, 2011, because she was abusing them.[82] Indeed, treatment notes from an emergency room visit in January, 2011, reveal that Rogers was admitted for abusing her pain patch by chewing it, and was found unconscious in a snowbank[83] – a visit that was followed three weeks later with one for narcotic withdrawal after discontinuing her pain patch.[84]

Similarly, the absence of pain treatment in early 2012 concluded with a visit to an emergency room in Branson, Missouri in March, 2012, where Rogers was treated for cervical

---

[81] ECF # 23 at 14.

[82] Tr. at 1544.

[83] *Id.* at 1608.

[84] *Id.* at 1129.

and lower back pain with a prescription for Vicodin.[85] Likewise, just two weeks after giving his functional capacity opinion, Dr. Mandel examined Rogers with a bone density study and ultrasound imaging, which both showed that Rogers had "marked bone loss" at the hip – which condition was then treated with a localized steroid injection for pain.[86]

Yet, even with the explanation for the gaps in pain treatment, the ALJ correctly noted that Rogers regularly sought and "experienced improvement" in her pain by various means.[87] In that regard, even if Rogers was required to discontinue use of certain pain medications because they were addictive, the record contains numerous occasions, including the most recent examples, where Rogers was able to obtain significant pain relief by other, non-addictive treatments, such as steroid injections. While more articulation on this point by the ALJ might have been useful, the reason given is not so defective as to be non-reviewable or unsupported by the record, in that the ALJ's statement that Rogers was able to achieve pain relief through "pain medication and steroid injections"[88] remains valid and not rebutted.

Finally, although the ALJ does not strictly adhere to the two-step *Gayheart* protocol for evaluating the opinion of a treating source, the reasoning here, as stated, does permit meaningful judicial review and, in the end, does provide a good reason for why the opinion of Dr. Mandel should not be afforded controlling weight.

---

[85] *Id.* at 1830.

[86] *Id.* at 2084.

[87] *Id.* at 329.

[88] *Id.*

## 2.     *Dr. Khoa Tran*

Khoa Tran, M.D., is a psychiatrist who treated Rogers on four occasions between November, 2010, and December, 2012. As with Dr. Mandel, the ALJ here did not strictly follow the analysis for treating sources set out in *Gayheart* but instead determined that Dr. Tran's opinion on Rogers's functional mental limitations was entitled to "little weight" because: (1) Rogers experiences improvement in her mental health symptoms with medication, and (2) Dr. Tran's more restrictive opinion is inconsistent with the finding that Rogers has intact memory and cognition.[89]

Rogers argues that these are not "good reasons" for downgrading Dr. Tran's opinion because: (1) any improvement in mental health symptoms does not directly correlate to when Rogers was properly taking her medication, and (2) Rogers's memory and cognition do not encompass the limitations attributed to other impairments, such as bipolar disorder, attention deficit disorder, and panic disorder.[90]

While Rogers's second point about her other disorders might well be enough to warrant a remand in different situations, it does not reach that level here because the fundamental point of the ALJ's critique – that Rogers's symptoms improve when she takes her medication – is fully supported in the record. As the Commissioner observes, the only indication in the record that suggests that Rogers's mental health improvement was not tied

---

[89] *Id.*

[90] ECF # 20 at 20.

-18-

to her regular use of her medications is a single note from a counselor in November, 2012, that Rogers was "sleeping too much" and "having problems taking care of hygiene."[91]

In fact, a closer review of that counseling session – which, as the Commissioner notes, was not with an acceptable medical source[92] – reveals that Rogers's difficulties were clearly situational, in that she and her husband/boyfriend were facing unpaid bills while he waited for a settlement check to arrive.[93] This can hardly be evidence that her underlying mental health symptoms had inexplicably worsened despite taking her medication and so in contravention of all other evidence of record which plainly show improvement in those underlying conditions with proper medication.

Thus, I find that the reason given for not according Dr. Tran's opinion controlling weight is a good reason, and so the Commissioner's decision in this regard is supported by substantial evidence.

As a final observation, this is not a case in which the record contains no evidence supporting Rogers's critique of the ALJ's handling of her treating sources. Perhaps there might even be "substantial evidence" supporting Rogers's argument. But, as discussed above, there exists substantial evidence supporting the ALJ's finding.[94] The Commissioner's decision must be affirmed.

---

[91] Tr. at 2109.

[92] ECF # 23 at 18.

[93] Tr. at 2107.

[94] *Buxton*, 246 F.3d at 772.

Further, this affirmance should not be considered an approval of the ALJ's collapsing of the two-part *Gayheart* analysis into a single step. This "shortcutting" makes judicial review more difficult. Here, however, this error did not preclude meaningful review.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Rogers had no disability. The denial of Rogers's applications is affirmed.

IT IS SO ORDERED.


Dated: May 5, 2015                                                s/ William H. Baughman, Jr.
                                                                          United States Magistrate Judge